IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTINE B.[1]

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

Civ. No. 1:22-cv-01119-CL

**OPINION AND ORDER**

MARK D. CLARKE, Magistrate Judge.

Plaintiff Christine B. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"). All parties have consented to magistrate judge jurisdiction in this case. ECF No. 6. The decision of the Commissioner is REVERSED and REMANDED for the immediate calculation and award of benefits.

## BACKGROUND

Plaintiff filed an application for SSI on December 21, 2018. Tr. 232.[2] She later amended her alleged disability date to November 7, 2018, when she was 46 years old. Tr. 55, 78. At Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on March 1,

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case.

[2] "Tr." Citations are to the administrative record. ECF No. 10.

1 - Opinion and Order

2021. Tr. 47-77. On May 11, 2021, the ALJ issued a decision finding the Plaintiff not disabled. Tr. 24-39. On June 17, 2022, the Appeals Council denied review, making the ALJ's decision final. Tr. 1. This action followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,

then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

   a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001). The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54.

## THE ALJ'S FINDINGS

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date. Tr. 26. At step two, the ALJ found that Plaintiff has the following severe impairments:

> [P]eroneal tendonitis of the right ankle status post open reduction internal fixation ("ORIF"); levoscoliosis, stenosis, and spondylosis of the lumbar spine with radiculopathy; degenerative disc disease, stenosis, and disc extrusions of the cervical spine status post fusion; juvenile idiopathic scoliosis and degenerative disc disease

then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

   a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001). The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54.

## THE ALJ'S FINDINGS

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date. Tr. 26. At step two, the ALJ found that Plaintiff has the following severe impairments:

> [P]eroneal tendonitis of the right ankle status post open reduction internal fixation ("ORIF"); levoscoliosis, stenosis, and spondylosis of the lumbar spine with radiculopathy; degenerative disc disease, stenosis, and disc extrusions of the cervical spine status post fusion; juvenile idiopathic scoliosis and degenerative disc disease

3 - Opinion and Order

> of the thoracolumbar spine; obesity; myofascial pain syndrome; an
> affective disorder (variably called major depressive disorder,
> depression, persistent depressive disorder, or adjustment disorder);
> and an anxiety disorder (called either anxiety or panic disorder).

*Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Tr. 28. The ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following limitations:

> [T]he claimant can occasionally lift/carry 20 pounds and frequently
> lift/carry 10 pounds. She can stand and/or walk 4 hours and sit 6
> hours of an 8-hour workday. The claimant can never climb ladders,
> ropes, or scaffolds, and she can occasionally balance, stoop, kneel,
> crouch, crawl, or climb ramps and stairs. She can frequently reach,
> handle, finger, feel or operate hand controls with the bilateral
> upper extremities. She can tolerate no exposure to hazards,
> including unprotected heights. Mentally, she is limited to
> understanding, remembering, carrying out, and maintaining
> attention and concentration on no more than simple tasks and
> instructions, defined specifically as those job duties that can be
> learned in up to 30 days' time. She can sustain only ordinary
> routines and make no more than simple, work-related decisions.

Tr. 29-30. At step four, the ALJ noted Plaintiff had no past relevant work. Tr. 30. At step five, the ALJ concluded there were jobs that exist in significant numbers that Plaintiff could do, including tagging clerk, information clerk, and storage facility rental clerk. Tr. 38-39. Accordingly, the ALJ found Plaintiff was not disabled within the meaning of the Act. Tr. 39.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the evidence before the ALJ is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Commissioner] did not invoke in making its decision." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the Commissioner's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript

record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff contends the ALJ erred by (1) discounting her subjective symptom testimony, and (2) improperly rejecting medical opinion evidence.

### I.   Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by rejecting her subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).

#### A.   Plaintiff's Testimony

Regarding her physical impairments, Plaintiff was diagnosed with scoliosis as a child. Tr. 368. She has suffered regularly from back and neck pain, and her medical providers have prescribed various pain medications over the years, and she has self-medicated with cannabis. *See, e.g.*, Tr. 361, 375 (cannabis); 401 (gabapentin, cyclobenzaprine); 406 (increase gabapentin, lower cyclobenzaprine, add trazadone); 419 (increase gabapentin). In June 2020, Plaintiff had spinal fusion surgery in an attempt to reduce her pain. Tr. 542, 549, 550. Unfortunately, she did "not experience[] any relief" from the surgery. Tr. 695.

At the hearing, Plaintiff testified that her back and neck pain make it difficult for her to carry items and turn her head. Tr. 57. She testified that she can stand for only ten minutes before she needs to sit down because her "back burns" from the pain, and she can only walk fifty feet without a rest. Tr. 58. Since her surgery, she does not drive because she no longer has full mobility of her neck. Tr. 61. Plaintiff also testified that she has numbness and difficulty using her hands and she drops things "all the time." Tr. 58. She lacks the finger dexterity to button buttons or pick up coins from a table. Tr. 62.

Regarding her mental impairments, Plaintiff has a history of depression dating back to December 2011. Tr. 436. From January 2018 through March 2019, Plaintiff was regularly seeing a counselor and her medical providers were prescribing various medications to try and alleviate her symptoms. Tr. 658, 680, 462 (increased Sertraline); 381 (starting Duloxetine, stopping Sertraline); 383 (stopping Cymbalta, starting Lexapro); 388 (stopping Lexapro, staring Effexor); 406 (starting Lamotrigine); 411 (increased Lamotrigine); 416 (continue to increase Lamotrigine, starting Metoprolol Succinate). During this time period, Plaintiff also experienced traumatic life events that aggravated her depression, including the conviction of her husband for murder and receiving a 28-year sentence, her son's incarceration and loss of custody of his child, and her ten-year-old daughter's diagnosis of oppositional defiance disorder and ADHD. Tr. 370, 373, 670, 679. At the hearing, Plaintiff testified that she easily gets overwhelmed and cries often, including during the hearing. Tr. 63. When asked what symptoms she has with her anxiety, she said, "My shortness of breath right [now]. I can't think. I am having anxiety right now," and she clarified that she lives "in a state of anxiety and [she] suffer[s] from panic attacks." *Id.*

7 - Opinion and Order

B.     Analysis

First, the ALJ failed to articulate the reason for discounting Plaintiff's symptom testimony with sufficient specificity. A finding that a claimant's testimony is not credible "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (citation and quotation marks omitted).

In this context, that means an ALJ must "identify the testimony she found not credible," and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). Here, the ALJ failed to do so. The ALJ summarily concluded Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision," Tr. 31, and then simply summarized Plaintiff's medical record. "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony simply by reciting the medical evidence in support of his or her residual functional capacity determination" but must "specify which testimony she finds not credible," and the district court may not "comb the administrative record to find specific conflicts." *Brown-Hunter*, 806 F.3d at 489; *see also Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (stating that "provid[ing] a relatively detailed overview of [a claimant's] medical history . . . 'is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible'" (emphasis in original) (quoting *Brown-Hunter*, 806 F.3d at 494)); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (rejecting the argument that because the ALJ "set out his RFC and summarized the

8 - Opinion and Order

evidence supporting his determination" the court could infer "that the ALJ rejected [claimant's] testimony to the extent it conflicted with that medical evidence"). The ALJ's lack of specificity was in error.

To the extent the ALJ's rationale can be gleaned from the opinion, such rationales are not supported by substantial evidence. Regarding her physical impairments, the ALJ wrote "[t]here is no evidence in the record showing that the claimant is as limited as she alleged regarding sitting and standing, and her gait was noted to be normal," and that the "degree of pain alleged is inconsistent with the objective imaging scans." Tr. 31. An ALJ cannot insist on clear medical evidence to support each part of a claimant's subjective pain testimony when there is no objective evidence evidencing otherwise. *See Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("[A]n ALJ my not 'reject a claimant's subjective complaints based *solely* on lack of medical evidence to *fully corroborate* the alleged severity of pain.'" (emphasis added by court) (quoting *Burch*, 400 F.3d at 680)). Conflicting medical evidence is a permissible reason to discount testimony, but a lack of evidence cannot be the ALJ's sole reason for rejecting a claimant's testimony. *Id.* To do so was harmful error.

Regarding her mental impairments, the ALJ first noted that "claimant's complaints were [] related to situational familial stressors relating to her children or her husband." Tr. 34. Although "Social Security disability determinations must be based on medically determinable impairments, not situational stressors," *Lorilyn W. v. Comm'r Soc. Sec. Admin.*, No. 6:19-cv-00925-YY, 2020 WL 7028475, at *5 (D. Or. Nov. 30, 2020), the ALJ found that Plaintiff suffers from "major depressive disorder, depression, persistent depressive disorder" as a medically determinable severe impairment in step two, Tr. 26. To the extent the ALJ was referencing Plaintiff's therapy notes where she is updating her therapist on her life—i.e., her husband's trial,

9 - Opinion and Order

sentencing, and her daughter's struggles in school—such notes do not necessarily suggest that Plaintiff's symptoms were caused by those stressors, or that Plaintiff would not have had such symptoms in the absence of those issues.

Instead, the evidence in the medical record shows that Plaintiff worked with her medical providers from December 2017 through the end of the medical record in February 2021 to find prescriptions that relieved her mental health symptoms. Tr. 638 (12/21/2017 – tried Wellbutrin, Zoloft, Ativan, Effexor "and some other medications" in the past); 462 (4/19/2018 – increased Sertraline dose); 379 (5/18/2018 – stop Sertraline, start Duloxetine); 383 (7/19/2018 – stop Cymbalta, start Lexapro); 388 (8/15/2018 – stopped Lexapro, start Effexor); 392 (9/12/2018 – start Venlafaxine); 401 (1/23/2019 – noting that claimant is not tolerating medications); 406 (2/22/2019 – start Lamotrigine); 411 (4/2/2019 – increased Lamotrigine); 416 (5/1/2019 – increased Lamotrigine again, add Metoprolol Succinate); 689 (1/19/2021 – on Nortriptyline, adding Geodon). Such ongoing treatment for over twelve months, including continues care of mental health professionals, does not support the ALJ's conclusion that Plaintiff's impairments were "situational." *See Maria B. v. Saul*, No. EDCV 20-192-KK, 2020 WL 11884826, at *7 (C.D. Cal. Oct. 30, 2020) (recognizing that many district courts have "recognized treatment involving" these types of prescriptions is not conservative treatment); *see also* 20 C.F.R. § 416.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."). This medical history does not support the ALJ's assessment that Plaintiff's symptoms were related to situational stressors.

Finally, the ALJ wrote that Plaintiff "ended therapy and her therapist noted that the claimant did not want to address some of the areas that were main contributors to her depression." Tr. 34. As noted in Plaintiff's briefing, she took a break from therapy at the

10 - Opinion and Order

suggestion of her therapist. Tr. 680 ("Client responded favorably to therapy [session] by agreeing to write a letter of good bye to her husband or to decide if she needed to take a break from therapy."). And Plaintiff's failure or inability to confront all aspects of her mental health should not be used against her. *See Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299-300 (9th Cir. 1999) ("Indeed, we have particularly criticized the use of lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because it is questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."). Such rationales are not clear and convincing reasons to reject Plaintiff's symptom testimony.

In conclusion, the ALJ failed to provide sufficiently specific reasons for discounting Plaintiff's symptom limitations. Even assuming the ALJ was specific enough, the rationales provided were not supported by substantial evidence and constituted harmful error.

## II.    Medical Opinion

Plaintiff also assigns error to the ALJ's assessment of Dr. Katherine Warner's medical opinion. For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, at 5867-68, *available at* 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, ALJs must consider every medical opinion in the record and evaluate each opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2). ALJs are required to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

Regarding supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support [their] medical opinion, the

11 - Opinion and Order

more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). For consistency, the "more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). ALJs may also consider other factors relating to the provider's relationship with the claimant. 20 C.F.R. §§ 404.1520c(b)(3), 416.1520c(b)(3).

Dr. Warner met with Plaintiff on February 17, 2019, based on a referral from Oregon's Department of Human Services to "clarify [Plaintiff's] diagnosis, and to determine the affect of her diagnosis on her functioning and her ability to engage in activities of daily living." Tr. 474. After testing and evaluating Plaintiff, Dr. Warner concluded:

> [Plaintiff] is an individual who presents with a full scale IQ of 89, this scores is in the low average range. Her verbal comprehension index was 80 this is in the 9th percentile. [Plaintiff's] perceptual reasoning index was 100 which is at the 50th percentile. Her Working Memory Index was 80 (low average) and her Processing Speed Index score was 105 which is at the 63rd percentile.
>
> [Plaintiff] demonstrates symptoms indicative of persistent depression and an adjustment disorder and anxiety and depression associated with her husband's incarceration and her son's upcoming incarceration. She appears to have a panic disorder and a personality disorder with dependent and borderline traits. Given the longevity and persistence of her symptoms, her prognosis is guarded.

Tr. 477. In a Mental Residual Functional Capacity Report, Dr. Warner opined that Plaintiff was markedly limited in her ability to understand and remember detailed instructions; to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to work in coordination or proximity to others without being distracted by them; to make simple work related decisions; to complete a normal workday and workweek without

12 - Opinion and Order

interruptions; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; and to set realistic goals or make plans independently of others. Tr. 478-79.

The ALJ found Dr. Warner's opinion "not persuasive" because she relied on Plaintiff's subjective complaints and because her opinion was inconsistent with Plaintiff's ability to care for her daughter. Tr. 37. Neither rationale is a specific and legitimate reason supported by substantial evidence to reject Dr. Warner's opinion.

First, as the Ninth Circuit has made clear, mental health "[d]iagnosis will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Dr. Warner did not rely solely on Plaintiff's self-reports, but also evaluated her based on her medical record to that date and on testing. Tr. 474. Therefore, Dr. Warner's partial reliance on Plaintiff's self-reported symptoms is not a reason to reject her opinion. *See Buck*, 869 F.3d at 1049 (finding that psychiatrists "partial reliance on [claimant's] self-reported symptoms is thus not a reason to reject [doctor's] opinion").

Second, Plaintiff's ability to care for her daughter is not inconsistent with Dr. Warner's opinion. The evidence in the record regarding Plaintiff's care for her daughter is that she walks her to and from the bus stop, Tr. 258, she does some housework, taking breaks every 15 minutes, Tr. 60, and she relies on three friends to help with laundry and grocery shopping, Tr. 61. None of these activities contradict Dr. Warner's conclusion that Plaintiff is markedly limited in her "ability to complete a normal workday and workweek without . . . an unreasonably number and length of rest periods." Tr. 279. Without any inconsistency, such activity cannot constitute substantial evidence to reject the medical opinion. *See Trevizo v. Berryhill*, 871 F.3d 664, 676

13 - Opinion and Order

(9th Cir. 2017) ("Absent specific details about [claimant's] childcare activities, those tasks cannot constitute 'substantial evidence' inconsistent with [the doctor's] informed opinion, and thus the ALJ improperly relied on [claimant's] childcare activities to reject the treating physician opinion."). Therefore, the ALJ improperly rejected the opinion of Dr. Warner.

**III.  Remedy**

Because the ALJ committed harmful error, the next question before the Court is the proper remedy.[3] The credit-as-true analysis is well settled, longstanding, and binding on the district courts. *See Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989); *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996); *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Under the credit-as-true doctrine, a reviewing court should remand for a finding of disability and an award of benefits if: (1) the ALJ has failed to provide legally sufficient reasons for rejecting medical opinions or a claimant's testimony; (2) there are no outstanding issues to be resolved before a determination of disability can be made; and (3) the ALJ would be required to find the claimant disabled if the improperly rejected evidence were credited as true. *Smolen*, 80 F.3d at 1292.

For the reasons explained above, the first prong is met. For the second prong, there are no outstanding issues to be resolved before a determination of disability can be made. For the final prong, if Plaintiff's testimony and Dr. Warner's opinion are credited as true, the ALJ would be required to find Plaintiff disabled under the Act. Dr. Warner opined that Plaintiff had marked limitations, defined as a "limitation which precludes the ability to perform the designated activity on a regular and sustained basis, i.e., 8 hours a day, 5 days a week, or an equivalent work

---

[3] Plaintiff also argues that the ALJ erred in formulating the RFC. The Court need not address this argument given the conclusions above.

14 - Opinion and Order

schedule," Tr. 478, in her ability to "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" and "to complete a normal workday and workweek . . . without an unreasonably number and length of rest periods," Tr. 479. At her hearing, the vocational expert testified that five percent is the maximum that employers will tolerate an employee being off task and that employees can only miss one unscheduled day per month to be employable. Tr. 72-73. *See* SSR 96-8p, 1996 WL 374184 (July 2, 1996) ("A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."); *Tanya P. v. Comm'r, Soc. Sec. Admin.*, No. 6:18-cv-00158-HZ, 2019 WL 4567580 (D. Or. Sept. 20, 2019), at *10 (reversing and remanding for payment of benefits where an examining source's opinion that the claimant would be unable to maintain regular attendance or complete a normal workweek without interruptions from psychologically based symptoms was "sufficient evidence that Plaintiff could not perform work on a regular and continuing basis" (citing SSR 96-8p)); *Connie T. v. Berryhill*, No. 6:17-cv-01967-YY, 2019 WL 2419461, at *4 (D. Or. June 10, 2019) ("[I]f the discredited evidence is credited as true, the ALJ would be required to find plaintiff disabled based on [the medical] opinion. . . . Crediting [the medical] opinion compels a finding that plaintiff was unable to sustain work activities on a 'regular and continuing basis.'" (quoting SSR 96-8p)); *Fulsaas v. Berryhill*, No. 3:17-cv-00296-PK, 2018 WL 2091357, at *11 (D. Or. Mar. 22, 2018), *report and recommendation adopted,* No. 3:17-cv-00296-PK, 2018 WL 2090475 (D. Or. May 4, 2018) (reversing and remanding for an award of benefits where an improperly discredited opinion "on its own is sufficient evidence to demonstrate that [the claimant] could not perform any work on a regular and continuing basis" (citing SSR 96-8p)); *see also Garrison*, 759 F.3d at 1022-23 (reversing and remanding for an award of benefits where the "ALJ failed to provide a legally sufficient reason to reject [the

15 - Opinion and Order

claimant's] testimony and the opinions of her treating and examining medical caretakers" and the improperly discredited evidence, when credited as true, makes "clear that the ALJ would be required to find [the claimant] disabled on remand"). Accordingly, if the evidence is credited as true, there are no issues left to resolve in order to find Plaintiff incapable of full-time work. Therefore, there is no need to remand for further proceedings.

The Court is mindful of its duty not to substitute its discretion for that of the Commissioner. *See Brown-Hunter*, 798 F.3d at 754. However, if all three requirements of the credit-as-true analysis are satisfied, the Court must remand for an award of benefits unless "the record as a whole creates serious doubt that the claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021. The Court has found no serious doubt regarding Plaintiff's disability in this case. It is clear she has suffered from both her physical and mental impairments for years and is unable to work. The Court must remand for an award of benefits.

## ORDER

Based on the foregoing, the decision of the Commissioner is REVERSED and REMANDED for an immediate calculation and payment of benefits.

It is so ORDERED and DATED this 8 day of September, 2023.

---
MARK D. CLARKE
United States Magistrate Judge